**BROWN KWON & LAM LLP**
William Brown, Esq. (WB6828)
Angela Kwon, Esq. (AK1396)
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
wbrown@bkllawyers.com
akwon@bkllawyers.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **WILLIE BURTON, DAVID JOSEPH, SCOTT VADEN, and HOLLEE WARRIOR,** *on behalf of themselves and others similarly situated*, <br><br> **Plaintiffs,** <br><br> - against - <br><br> **ANDY FRAIN SERVICES, INC.,** <br><br> **Defendant.** | Case No: <br><br> **CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiffs Willie Burton, David Joseph, Scott Vaden, and Hollee Warrior (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, upon personal knowledge as to themselves, and upon information and belief as to other matters, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendant Andy Frain Services, Inc. (hereinafter, "Defendant") and allege as follows:

**INTRODUCTION**

1. Plaintiffs bring this action on behalf of themselves and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from

1

Defendant: (1) unpaid overtime wages, (2) unpaid wages due to off-the-clock work, (3) liquidated damages, and (4) attorneys' fees and costs.

2. Plaintiffs also bring this action on behalf of themselves and similarly situated workers pursuant to the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, the supporting New York State Department of Labor Regulations, and the Federal Rule of Civil Procedure 23 ("Rule 23"), seeking from Defendant: (1) unpaid overtime wages, (2) unpaid wages due to off-the-clock work, (3) unlawful wage deductions, (4) stautory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

4. This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

*Plaintiffs*

*Willie Burton*

7. Plaintiff Willie Burton is an adult who resides in Bronx County, New York.

8.  Plaintiff Willie Burton was a covered employee within the meaning of the FLSA and NYLL.

9.  Plaintiff Willie Burton retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

### *David Joseph*

10. Plaintiff David Joseph is an adult who resides in Queens County, New York.

11. Plaintiff David Joseph was a covered employee within the meaning of the FLSA and NYLL.

12. Plaintiff David Joseph retained Brown Kwon & Lam LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

### *Scott Vaden*

13. Plaintiff Scott Vaden is an adult who resides in Queens County, New York.

14. Plaintiff Scott Vaden was a covered employee within the meaning of the FLSA and NYLL.

15. Plaintiff Scott Vaden retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

### *Hollee Warrior*

16. Plaintiff Hollee Warrior is an adult who resides in Bronx County, New York.

17. Plaintiff Hollee Warrior was a covered employee within the meaning of the FLSA and NYLL.

18. Plaintiff Hollee Warrior retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

*<u>Defendant</u>*

19. Defendant Andy Frain Services, Inc. is a foreign business corporation organized under the laws of the State of Illinois and registered to conduct business in the State of New York.

20. Defendant operates it business in New York from its office located at 60-10 Queens Boulevard, Woodside, NY 11377.

21. Defendant has an address for service of process located at C/O CT Corporation System, 28 Liberty Street, New York, New York 10005.

22. At all relevant times, Defendant had an annual dollar volume of sales in excess of $500,000.

23. At all relevant times, Defendant met the definition of an "employer" under the FLSA and NYLL.

24. At all relevant times, Defendant employed Plaintiffs, FLSA Collective Members (defined below), and Class Members (defined below).

25. At all relevant times, Defendant had substantial control over the working conditions of Plaintiffs, FLSA Collective Members, and Class Members.

26. At all relevant times, Defendant maintained control, oversight, and direction over Plaintiffs, FLSA Collective Members, and Class, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

27. At all relevant times, Defendant applied the same employment policies, practices, and procedures to Plaintiffs, FLSA Collective Members, and Class.

28. At all relevant times, Defendant had the power to prevent or stop any unlawful practices alleged herein.

29. At all relevant times, Defendant had the power to maintain employment records, including personnel files, time records and/or wage records of Plaintiffs, FLSA Collective Members, and Class.

## FLSA COLLECTIVE ACTION ALLEGATIONS

30. Plaintiffs bring the First Cause of Action, the FLSA claims, on behalf of themselves and all similarly situated current and former non-exempt employees who worked for Defendant within the State of New York at any time from the date that is three (3) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

31. At all relevant times, Plaintiffs and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendant's common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiffs and FLSA Collective Members the full and proper wages for all hours worked. Specifically, Defendant failed to pay overtime pay for all hours worked in excess of forty (40) per workweek and failed to pay wages for off-the-clock work to Plaintiffs and FLSA Collective Members. Plaintiffs' claims stated herein are essentially the same as those of the other FLSA Collective Members.

32. All of the work that Plaintiffs and FLSA Collective Members have performed have been assigned by Defendant, and/or Defendant has been aware of all of the work that Plaintiffs and FLSA Collective Members have performed.

33. Defendant is aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

34. For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendant's records.

## NEW YORK CLASS ACTION ALLEGATIONS

35. Plaintiffs bring the Second Cause of Action, the NYLL claims, pursuant to Rule 23, on behalf of themselves and a class of persons consisting of all current and former non-exempt employees who worked for Defendant within the State of New York at any time from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter (the "Class" or "Class Members").

36. Excluded from the Class are Defendant, Defendant's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendant; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

37. The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendant's payroll and personnel records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Defendant's records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendant's records. Notice can be provided by means permissible under Rule 23.

38. The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because the

facts on which the calculation of that number rests presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class.

39. Plaintiffs' claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

40. Plaintiffs and Class Members were subject to the same practices of Defendant, as alleged herein, of (i) failing to pay overtime wages, (ii) failing to pay wages for off-the-clock work, (iii) unlawfully deducting wages, (iv) failing to provide proper wage notices, and (v) failing to provide proper wage statements, in violation of the NYLL.

41. Plaintiffs and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendant's common policies, practices, and patterns of conduct. Defendant's corporate-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class Member.

42. Plaintiffs and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures under the NYLL.

43. Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiffs and individual Class Members and include, but are not limited to, the following:

   a. Whether Defendant employed Plaintiffs and Class Members within the meaning of the NYLL;

   b. Whether Defendant paid Plaintiffs and Class Members the lawful overtime wages for hours worked in excess of forty (40) per workweek;

   c. Whether Defendant failed to pay Plaintiffs and Class Members for off-the-clock work;

    d.   Whether Defendant satisfied the notice and procedural requirements prior to deducting the wages of Plaintiffs and Class Members;

    e.   Whether Defendant failed to furnish Plaintiffs and Class Members with proper wage notices, at hire and before a pay change, as required by the NYLL; and

    f.   Whether Defendant failed to furnish Plaintiffs and Class Members with proper wage statements with every payment of wages, as required by the NYLL.

44.    Plaintiffs are able and willing to fairly and adequately protect the interests of Class Members, and have no interests antagonistic to Class Members.

45.    Plaintiffs are represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

46.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

47.    On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would

result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

48. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

49. Defendant and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF FACTS

### *Plaintiff Willie Burton*

50. Plaintiff Willie Burton worked for Andy Frain Services as a security manager from around August 21, 2020 until September 20, 2020.

51. Plaintiff was initially hired to work at the U.S. Open tennis tournament in Flushing, Queens, which was from August 31, 2020 until September 13, 2020, but was later asked to stay on for the U.S. Open golf tournament, which was from September 17, 2020 until September 20, 2020.

52. Plaintiffs' duties primarily involved patrolling designated posts, working with other security guards to ensure that all areas and posts were being covered, and checking on other security guards to make sure that they were in the correct locations.

53. Throughout his employment with Defendant, Plaintiff was paid at an hourly rate of $20.

54. For the tennis tournament, there were two possible shifts available, the morning shift and the night shift. Throughout his employment with Defendant, Plaintiff Burton worked the night shift, which was from 3:00 p.m. to closing, seven days per week. Closing was generally between 12:00 a.m. and 2:00 a.m. Therefore, Plaintiff worked at least sixty-three (63) hours per week.

55. For the golf tournament, Plaintiff Burton was picked up by a shuttle at 4:00 a.m. and arrived at Rye Playland at 4:30 a.m. He would then be placed on a bus which would take him to the golf course around 5:00 a.m. Plaintiff would sign in at the golf course, and would then be taken back to Rye Playland where he would provide security at the Covid testing tent. Plaintiff worked continuously at the Covid testing tent, without any breaks until around 8:00 p.m. Thus, during the week Plaintiff worked at the golf tournament he worked a total of 105 hours.

56. Defendant inexplicably placed a stop payment order on near all of Plaintiff Burton's earned wages, including payments of $1,755.00 and $2,385.00. Thus, in addition to the wage deductions described below, Plaintiff Burton was not paid his earned wages.

57. Furthermore, Defendants paid Plaintiff Burton at his straight hourly rate for all hours worked, and failed to pay any overtime premiums for work performed in excess of forty hours per week.

*Plaintiff David Joseph*

58. Plaintiff David Joseph worked for Andy Frain Services in various roles from around 2007 until around 2012 and again from on or around August 16, 2020 until September 20, 2020. Plaintiff first worked as a security guard at an indoor pool from around 2007 until around 2010. When Any Frain lost the contract at the indoor pool, Plaintiff was transferred to a homeless shelter in East Harlem where he worked security from around 2010 until around 2011. Plaintiff was re-hired in August 2020 to work as a Fire Safety Officer and Administrator for the U.S. Open tennis tournament.

59. During the tennis tournament, Plaintiff Joseph worked both the morning and night shift seven days per week. From 8:00 a.m. to around 6:00 to 7:00 p.m. Plaintiff worked as a Fire Safety Officer. Plaintiff then continued working, as an administrator, until around 10:00 p.m. to 12:00 a.m. Thus, during the tennis tournament, Plaintiff worked at least ninety-eight (98) hours per week.

60. Plaintiff was initially hired to work at the U.S. Open tennis tournament in Flushing Queens, which was from August 31, 2020 until September 30, 2020, but was later asked to stay on for the U.S. Open golf tournament, which was from September 17, 2020 until September 20, 2020.

61. During the golf tournament, Plaintiff Joseph worked from 10:30 a.m. to 8:15 p.m. on September 15, 2020; from 6:45 a.m. to 8:30 p.m. on September 16, 2020; from 7:30 a.m. to 8:06 p.m. on September 17, 2020; from 10:30 a.m. to 8:00 p.m. on September 18, 2020; from 8:30 a.m. to 8:00 p.m. on September 19, 2020; and from 6:30 a.m. to 7:30 p.m. on September 20, 2020.

62. For both the tennis and golf tournaments, Plaintiff Joseph was paid $22.00 per hour for all hours worked, including for those in excess of forty (40) hours per week. Defendants therefore failed to pay Plaintiff overtime premiums equal to 1.5x his regular rate of pay.

*Plaintiff Scott Vaden*

63. Plaintiff Scott Vaden worked for Andy Frain Services as a fire safety officer, supervisor and driver from around August 13, 2020 until September 20, 2020.

64. Plaintiff Vaden was initially hired to work at the U.S. Open tennis tournament in Flushing, Queens, from August 19, 2020 until September 13, 2020, but was later asked to stay on for the U.S. Open golf tournament, which was from September 14, 2020 until September 20, 2020.

65. Plaintiff Vaden began working for Defendant as a fire safety officer and supervisor on August 19, 2020, and continued working in those positions until September 13, 2020. During this time, Plaintiff worked seven days per week, and split his time evenly working as a fire safety officer and supervisor. He thus worked three to four days per week as a fire safety officer and three to four days per week as a supervisor. As a fire safety officer, Plaintiff Vaden worked from 9:00 a.m. until 6:00 p.m. to 7:00 p.m. As a supervisor Plaintiff Vaden worked from around 2:30 p.m. until around 12:00 p.m.

66. From September 14, 2020 until September 20, 2020, Plaintiff Vaden worked for Defendant as a driver. As a driver, Plaintiff drove a twelve-passenger van to transport employees to the event sites and would generally work from around 4:00 a.m. until 2:00 a.m., with breaks from around 10:30 a.m. until 1:00 p.m. 4:30 until 7:00 p.m., and 9:00 p.m. to 11:00 p.m. Plaintiff thus worked around fifteen (15) hours per day, for a total of one hundred and five (105) hours during the golf tournament.

67. While working at the tennis tournament, Plaintiff Vaden was paid an hourly rate of $20. While working at the golf tournament, he was paid a daily rate of $200. Throughout his employment, Plaintiff was not paid any overtime premiums for work performed in excess of forty (40) hours per week.

*Plaintiff Hollee Warrior*

68. Plaintiff Hollee Warrior worked for Andy Frain Services as a supervisor for the U.S. Open tennis tournament in Flushing, Queens from on or around August 17, 2020 until September 13, 2020, but was later asked to stay on for the U.S. Open golf tournament, which was from September 14, 2020 until September 20, 2020.

69. Plaintiff Warrior's primary duties included ensuring that players entered their games safely, and overseeing Mega Security staff, a subcontractor of Andy Frain.

70. Throughout the relevant period, Plaintiff Warrior was paid at an hourly rate of $25.

71. Throughout her employment with Defendant, Plaintiff Warrior worked the night shift, from around 3:30 p.m. until at least 12:30 a.m., six days per week, for a total of at least fifty-four (54) hours per week.

72. Plaintiff Warrior did not receive any of her compensation until after her termination. Moreover, she was never given her final week's pay check.

73. Throughout her employment, Plaintiff was paid at her straight hourly rate and did not receive any overtime premiums for work performed in excess of forty (40) hours per week.

*Unpaid Wages for Off-the-Clock Work*

74. Throughout the relevant time period, Defendant did not allow Plaintiffs, FLSA Collective Action Members and Class Members to clock themself in or out for their hours worked. Instead, an office administrator was left in charge of recording the employees' hours by clocking them and in out upon arriving and leaving the job site.

75. Throughout the relevant time period, Defendant's senior managers regularly instructed the office administrator to clock out all of the employees at the end of their scheduled shifts, even though the employees were still at the job site finishing up their duties. As a result,

Plaintiffs, FLSA Collective Action Members and Class Members were not paid any wages for approximately ten (10) to thirty (30) minutes of work time every day.

### *Unlawful Wage Deductions*

76. Defendant completely failed to pay Plaintiffs and Class Members their final or in some cases final two pay checks.

77. Subsequent to failing to pay Plaintiffs and Class Members their wages, Defendant informed employees that the non-payment was a deduction due to a previous overpayment of wages.

78. Upon information and belief, no such overpayment was made and/or the amount deducted exceeded any such overpayments.

79. Furthermore, Defendant failed to provide Plaintiffs and Class Members with notice prior to making the deduction nor did Defendant implement a procedure by which employees may dispute the overpayment and terms of recovery, and/or seek a delay in the recovery of such overpayment, as required by NYLL §§ 195-5.1(e)-(f).

80. For a number of its employees, Defendant further deducted wages from more than one paycheck, including, from Plaintiff Burton. For such employees, the subsequent deductions exceeded 12.5% of their gross wages and reduced their effective hourly wage below the statutory state minimum wage.

### *FLSA Collective Members and Class Members*

81. Based on Plaintiffs' observations and conversations with their co-workers at Andy Frain Services, Plaintiffs, FLSA Collective Members and Class Members similarly worked long hours exceeding forty (40) hours per week.

82. Based on Plaintiffs' observations and conversations with their co-workers at Andy Frain Services, Defendant claimed a similar wage deduction for all employees working at the U.S. Open Tennis and Golf Tournaments.

83. Based on Plaintiffs' observations and conversations with co-workers at the U.S. Open Golf and Tennis Tournaments, Defendant failed to pay Plaintiffs, FLSA Collective Members and Class Members their full wages for off-the-clock work, including hours worked in excess of forty (40) hours per week.

84. Based on Plaintiffs' observations and conversations with co-workers at the U.S. Open Golf and Tennis Tournaments, Defendant failed to provide proper wage notices and pay statements to Plaintiffs and Class Members.

85. Defendant knowingly and willfully operated their business with a policy of failing to pay the full amount of wages for off-the-clock work, including hours worked in excess of forty (40) hours per week, to Plaintiffs, FLSA Collective Members and Class Members, in violation of the FLSA and NYLL.

86. Defendant knowingly and willfully operated their business with a policy of unlawfully deducting the wages of Plaintiffs and Class Members in violation of the NYLL.

87. Defendant knowingly and willfully operated their business with a policy of not providing proper wage notices to Plaintiffs and Class Members pursuant to the requirements of the NYLL.

88. Defendant knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiffs and Class Members pursuant to the requirements of the NYLL.

## STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION
### *Violation of the Fair Labor Standards Act*

89. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

90. The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendant and protect Plaintiffs and FLSA Collective Members.

91. Defendant failed to pay Plaintiffs and FLSA Collective Members the lawful overtime wages for all hours worked in excess of forty (40) per workweek at a rate not less than one and one-half times the employees' regular rate of pay, in violation of the FLSA.

92. Defendant failed to pay wages to Plaintiffs and FLSA Collective Members for off-the-clock work, including hours worked in excess of forty (40) hours per week, in violation of the FLSA.

93. Defendant failed to properly disclose or apprise Plaintiffs and FLSA Collective Members of their rights under the FLSA.

94. Defendant's unlawful conduct has been willful and intentional. Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Members the lawful wages for all hours worked when Defendant knew or should have known such was due. Defendant has not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and FLSA Collective Members.

95. Because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

96. As a result of Defendant's willful violations of the FLSA, Plaintiffs and FLSA Collective Members have suffered damages by being denied the full and proper wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

97. Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Members and the actual compensation paid to Plaintiffs and FLSA Collective Members should be in the possession and custody of Defendant. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

## **SECOND CAUSE OF ACTION**
### *Violation of the New York Labor Law*

98. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

99. At all times relevant, Plaintiffs and the Class have been employees of Defendant, and Defendant has been an employer of Plaintiffs and the Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

100. Defendant failed to pay Plaintiffs and Class Members the lawful overtime wages for all hours worked in excess of forty (40) per workweek at a rate not less than one and one-half times the employees' regular rate of pay, in violation of the NYLL.

101. Defendant failed to pay wages to Plaintiffs and Class Members for off-the-clock work, in violation of the NYLL.

102. Defendant unlawfully deducted the wages of Plaintiffs and Class Members by failing to pay any wages for an entire week's labor, stating that Defendant had overpaid the

employees in prior pay periods. However, the wage deductions were unlawful because Defendant failed to meet the notice and procedural requirements under 12 NYCRR § 195-5.

103. Defendant failed to furnish Plaintiffs and the Class with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

104. Defendant failed to furnish Plaintiffs and the Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

105. Defendant failed to keep, make, preserve, maintain, and furnish accurate records of the hours worked by Plaintiffs and Class Members as required by the NYLL and the supporting New York State Department of Labor Regulations.

106. Defendant failed to properly disclose or apprise Plaintiffs and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

107. As a result of Defendant's willful violations of the NYLL, Plaintiffs and the Class are entitled to recover from Defendant: unpaid overtime wages, unpaid wages for off-the-clock work, unlawfully deducted wages, liquidated damages, statutory penalties, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, FLSA Collective Members and the Class, respectfully request that this Court grant the following relief:

a. Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b. Certification of this case as a class action pursuant to Rule 23;

c. Designation of Plaintiffs as representatives of the Class and counsel of record as Class Counsel;

d. An award of unpaid overtime wages due under the FLSA and NYLL;

e. An award of unpaid wages for off-the-clock work due under the FLSA and NYLL;

f. An award of unlawfully deducted wages due under the NYLL;

g. An award of liquidated damages for Defendant's failure to pay wages, due under the FLSA or NYLL;

h. Statutory penalties for Defendant's failure to provide proper wage notices, as required by the NYLL;

i. Statutory penalties for Defendant's failure to provide proper wage statements, as required by the NYLL;

j. Pre-judgment and post-judgment interest;

k. Reasonable attorneys' fees and costs of this action;

l.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

m.  An injunction against Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

n.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: August 22, 2022                    Respectfully submitted,

**BROWN, KWON & LAM LLP**

By:   */s/ William Brown*

William Brown, Esq.
Angela Kwon, Esq.
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
akwon@bkllawyers.com
wbrown@bkllawyers.com
*Attorneys for Plaintiffs*